UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No: 05-CR-10204-GAO

_____ )
                          )
UNITED STATES OF AMERICA  )    **MEMORANDUM SUPPORTING**
                          )    **DEFENDANT'S MOTION TO SUPPRESS**
v.                        )    **EVIDENCE SEIZED PURSUANT TO AN**
                          )    **UNLAWFUL SEARCH WARRANT AND**
PAUL HICKS                )    **REQUEST FOR HEARING**
_____ )


**<u>FACTS</u>**

On January 20, 2005, law enforcement officers executed a "no knock" search warrant[1] on the premises of 15 Cabot Street, Brockton, Massachusetts. The warrant was issued by an assistant clerk magistrate of the Brockton District Court upon information provided by Massachusetts State Trooper, Richard F. Long ("Long")[2].

At the time of the search warrant's execution, Mr. Hicks was present at 15 Cabot Street. He did not consent or otherwise grant permission to the officers to search his person, his immediate surroundings, or the 15 Cabot Street property. The officers' authority to conduct the search was premised solely upon the search warrant.

_____

[1] Search Warrant No: 050120KML-2 is attached as Exhibit A.
[2] Long's affidavit in support of application for search warrant is attached as Exhibit B.

1

Return of the warrant was made on January 26, 2005.[3] Mr. Hick's challenges the legality of the search warrant and seeks suppression of all items listed in the return.  Pertinent factual allegations contained in the affidavit will be addressed in the legal analysis presented *infra*.

## ARGUMENT

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures and provides that no warrant shall issue unless supported by probable cause.  U.S. Const. amend. IV. Probable cause is a fluid concept with many variables that figure into its analysis. Illinois v. Gates, 462 U.S. 213, 232, 239 n. 11 (1983). To establish probable cause for a search warrant there must be a sufficient showing to satisfy a person of reasonable caution that evidence will be found at the place to be searched.  United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999). Probable cause is a practical, commonsense decision whether, given the circumstances contained in a search warrant application, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  Gates, 462 U.S. at 238-39.

Before a search warrant may issue, the government, by means of affidavit, must demonstrate to a magistrate that there is probable cause to believe that 1.) a crime has been committed—

---

[3] Return attached as Exhibit C.

the commission element, and 2.) that enumerated evidence will be
found in the place to be searched—the nexus element. United
States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005). The nexus
element is satisfied if the government establishes that there is
a fair probability that contraband or evidence will be found in
the particular place to be searched. Feliz, 182 F.3d at 86;
United States v. Pina, 2003 U.S. Dist. LEXIS 8649 (D. Mass.
2003). The fair probability must be based upon facts provided
through direct observations or upon facts from which a
reasonable inference may be drawn of the probable presence of
incriminating evidence at the place to be searched. Feliz, 182
F.3d at 87.  If the government is to rely on inferences as
opposed to direct observations, then one must consider the type
of crime investigated, the nature of the items sought, the
ability for concealment, and the normal presumption of where one
would hide criminal evidence. Id. at 88; Ribeiro, 397 F.3d at
49.

There are a composite of factors which the court considers
in determining whether or not an affidavit in support of a
search warrant contained the necessary nexus showing for
issuance of a search warrant.  Evidence that a defendant has
engaged in drug sales of a significant quantity or over
substantial period of years is circumstantial proof that the
defendant keeps evidence or proceeds of his dealings in a secure

yet readily available location, such as his residence. Feliz, 182 F.3d at 86-7. In Feliz, the court also noted that the affiant directly observed controlled buys carried out between a confidential informant and the defendant and the informant told the affiant that the defendant was able to transfer a kilogram of cocaine. Id. In Ribeiro, the court concluded it was reasonable to infer that a regular, large scale drug trafficker would keep evidence of his drug dealings in his residence based on evidence that the defendant conducted four (4) drug sales to the affiant in less than a month for a total of three thousand six hundred dollars ($3,600.00). Ribeiro, 397 F.3d at 49.

The courts also review affidavits in support of search warrant applications to determine whether or not the magistrate was provided with sufficient evidence linking a defendant to the place to be searched. Pina, 2003 U.S. Dist. LEXIS 8649; United States v. Dessesaure, 429 F.3d 359, 368 (1st Cir. 2005). In Pina and Dessesaure, in which the courts affirmed a search warrant's issuance, the court observed that the defendant was seen conducting drug transactions from a vehicle registered in the defendant's name at the residence ultimately searched. Id. In Ribeiro, the affiant provided the issuing magistrate with registry records indicating that the defendant resided at the searched location. Ribeiro, 397 F.3d at 45.

A defendant's comings and goings before and after a drug transaction are additional factors the court reviews. Observations of a defendant leaving his residence before a sale or returning to his residence after a sale tends to favor a probable cause finding. <u>Pina</u>, 2003 U.S. Dist. LEXIS at *4; <u>Dessesaure</u>, 429 F.3d at 368; <u>Ribeiro</u>, 397 F.3d at 49.

Weight is given to an affiant's training, education, and experience in narcotics investigations. <u>United States v. Fortes</u>, 2006 U.S. Dist. LEXIS 5574 (D. Mass. 2006). An affiant's generalized observations about criminal habits alone are insufficient to establish probable cause. <u>Ribeiro</u>, 397 F.3d at 50.  However, when combined with other factors, the officer's experience provides support to establish probable cause. <u>Id</u>.

Although a degree a deference is paid to the issuing magistrate, the court must conscientiously review affidavits in support of search warrant applications to ensure that the Fourth Amendment protections are not invaded by the government. <u>Gates</u>, 4621 U.S. at 239. The court must be confident that the magistrate had a substantial basis for concluding that probable cause existed.  <u>Id</u>. at 238-39.  If the court is unable to find the substantial basis, then the warrant should not have issued and the fruits of the search must be suppressed. <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961); <u>Weeks v. United States</u>, 232 U.S. 383 (1914).

In this case, an assistant clerk magistrate issued a "no knock" search warrant of "15 Cabot Street, Brockton, Massachusetts, which...may be occupied by Paul Hicks." The search warrant was issued upon a presentation of facts contained in an affidavit of Trooper Richard F. Long ("Long") in support of application for search warrant. The affidavit contained an insufficient showing to establish that there was probable cause to believe that evidence would be found at 15 Cabot Street.

Long's affidavit did not establish that alleged drug transactions were in any way connected with 15 Cabot Street. The substance of Long's presentation begins at paragraph six (¶6) where he details a meeting with CI#1. The information contained in ¶6 is that CI#1 dials a cellular phone number and arranges to purchase crack cocaine at public locations in Brockton from a man known to CI#1 as "Pudgie." Aff. ¶6. The cellular telephone number is not registered to Mr. Hicks. It is listed to Edward Robinson ("Robinson"). Aff., ¶11. CI#1 did not allege that the drug purchases occurred at 15 Cabot Street. Aff. ¶6. The affidavit does not mention how often the purchases are arranged; the purchase locations; the proximity or lack of proximity between the purchase location and 15 Cabot Street; the quantity of drugs purchased; the quality of drugs purchased; or the amount of money transferred during the purchase. Aff. ¶6.

Long alleges in ¶7 that CI#1 participated in a so called controlled purchase of drugs from "Pudgie" on January 7, 2005. CI#1 dialed Robinson's cellular number listed and arranged to meet at a public location in Brockton. Aff., ¶9. Long surveilled CI#1 directly to the pre-arranged location. Id. CI#1 returned with crack cocaine which he said he purchased from "Pudgie". Id. The affidavit does not state nor suggest that Long observed the alleged transaction between "Pudgie" and CI#1. Id.

The affidavit contains no information to provide a nexus between the so-called controlled purchase and 15 Cabot Street. There is no information regarding the public location where CI#1 and "Pudgie" met; the amount of time that transpired between "Pudgie's" arrival and the time the phone call was placed; the direction from which "Pudgie" arrived; the place where "Pudgie" returned following the sale; the proximity or lack of proximity to 15 Cabot Street; the manner in which "Pudgie" arrived, i.e. motor vehicle, on foot, public transportation; the quality of drug purchased; the amount purchased; and the cash transferred for the purchase. See Aff. ¶9. Conspicuously absent is any observation of "Pudgie" departing 15 Cabot Street prior to the sale or returning to 15 Cabot Street following the so-called controlled purchase.

Long provided the magistrate with details of a second so called controlled purchase allegedly occurring on January 16,

2005. Aff., ¶10. CI#1 again dialed Robinson's phone number listed to Robinson. Aff., ¶10.  The affidavit contains no information regarding with whom the CI was conversing. The cellular phone number is not listed to Mr. Hicks, nor is there any information provided in the affidavit that the CI#1 could authenticate the voice on the phone with "Pudgie" from whom he allegedly purchased drugs. See Aff., ¶10.  Within ten (10) minutes of the phone call, a Mazda vehicle arrived at a pre-arranged public location. Aff., ¶10. The vehicle's registration was not in the name of Mr. Hicks, nor was it registered to 15 Cabot Street. Aff., ¶11.  It was registered to Burnette Dubose with an address of Apartment 101,167 Newbury Street, Brockton. Aff., ¶11. Long alleged no connection between Hicks and Dubose. CI#1 claimed that he purchased drugs from "Pudgie" during the buy; however, Long, could identify the vehicle's operator only as a black male. Aff., ¶10.

    As is true of the first so called controlled buy, Long provide little information regarding the transaction.  Long did not describe from where the Mazda vehicle arrived; the proximity or lack of proximity between the purchase location and 15 Cabot Street; the quality of drug purchased; the quantity of drug allegedly purchased; or the amount of cash transferred during the purchase.

Long stated that the black Mazda registered to Burnette Dubose at apartment 101 Newbury Street, was surveilled to 15 Cabot Street. Aff., ¶10.  No information was provided regarding 1.) the course the black Mazda took to travel to 15 Cabot Street, i.e. evasive driving, a direct route, the number of stops along the way; 2.) the distance 15 Cabot Street was from the place of the alleged controlled buy; 3.) whether or not the black male allegedly driving the vehicle entered 15 Cabot Street residence; 4.) or the amount of time the black Mazda remained at 15 Cabot Street.

Long also alleged that on January 19, 2005, CI#1 told him that he saw "Pudgie" within the past twenty-four (24) hours and observed him in possession of crack cocaine. Aff., ¶13.  Again CI#1 did not describe the amount of drugs allegedly possessed by "Pudgie," where the observation was made, nor where and how "Pudgie" came into possession of the narcotics. See Aff, ¶13.

In addition to failing to establish a link between any drug transactions and 15 Cabot Street, Long also failed to establish a meaningful link between Hicks and 15 Cabot Street. The only described motor vehicle in Long's affidavit is the black Mazda which is not registered to Hicks and is not listed at 15 Cabot Street.  The cellular phone number is not in Hicks's name and is not registered to 15 Cabot Street.  Mr. Hicks is never

physically observed by CI#1 or police surveillance as being present at 15 Cabot Street.

Long expressed familiarity with 15 Cabot Street and knowledge of its inhabitants as the result of past experience. Aff., ¶12. Long knew that 15 Cabot Street was occupied by Edward Robinson and Renay Yarell, not Mr. Hicks. Aff., ¶12. Long stated that he executed a search warrant for the property in 2004. Aff., ¶12. Mr. Hicks was not present during the warrant's execution. Aff., ¶12.

Long's best effort to establish a connection between Hicks and the address is his reference to his belief that Hicks dates Yarell. Aff., ¶12. Even if so, it is not necessarily probable that one resides with a woman he dates. Also, Long references a check with Eastern Utilities Security revealing service listed to Hicks. Aff., ¶11. Long does not provide information regarding what service is listed; when the service was initiated; if payment is current; or if the account is active. See Aff., 11. Conspicuously absent from Long's report is mention of registry checks or board of probation records checks as to Hick's listed address.

The affiant attempted to rely on his training and experience to buttress his inadequate attempt to show probable cause. Aff., ¶14. However, Long could do no better than state a belief that Hicks maintained 15 Cabot Street to distribute

narcotics and stated that drugs, equipment, and proceeds may be kept there.  Aff., ¶14. Long's statements were speculation and conjecture due to the fact that he had insufficient evidence that Hicks resided at 15 Cabot Street or utilized Cabot Street to engage in criminal activity.

The above analysis demonstrates that Mr. Hicks's case is vastly unlike the cases endorsing a magistrate's search warrant issuance. Dissimilar to the affidavits in support of search warrants in Ribeiro and Feliz, there is no allegation in the affidavit in Mr. Hick's case that Mr. Hicks was dealing substantial amounts of drugs for large quantities of cash.  See Feliz, 182 F.3d at 87; Ribeiro, 397 F.3d at 50. None of the information regarding the controlled buys or CI#1's alleged knowledge that "Pudgie" possessed cocaine described the quantity of drugs transacted or the cash that was transferred.  The magistrate was not provided with any information regarding whether or not the two controlled buys were merely two simple sales of a "twenty" constituting a small amount of drugs with a combined value of forty dollars ($40.00). The want of information regarding the quantity and cash value of the alleged transactions vitiates the presumption that a drug trafficker must store his drugs in a safe place with easy access such as his residence.  See Feliz, 182 F.3d at 87-8.

In addition, unlike _Feliz_ and _Ribeiro_ where the investigation into each individual lasted for an extended period of time, the investigation and two (2) controlled buys for an unspecified amount of drugs at an unspecified cash value in this case transpired during a less than two (2) week period from January 7, 2005, to January 20, 2005. _See Feliz_, 182 F.3d at 84-5; _Ribeiro_, 397 F.3d at 45-6.

Furthermore, the magistrate had scant information regarding "Pudgie's" comings and goings prior to and after the alleged drug transactions. On only one (1) occasion was 15 Cabot Street referred to in connection with a drug purchase. The information Long provided was unlike the observations provided to the magistrates in _Pina_, _Dessesaure_, and _Ribeiro_ in which the defendant was seen leaving or returning to his residence shortly before or after a transaction. _See Pina_, 2003 U.S. Dist. LEXIS at *4; _Dessesaure_, 429 F.3d at 368, _Ribeiro_, 397 F.3d at 49.

Moreover, Long provided the magistrate with insufficient documentary evidence that Hicks resided at 15 Cabot Street. Registry records showing that the Defendant resided at the place to be searched presented to the magistrate in _Ribeiro_ were not provided by Long to the magistrate in this case. _See Ribeiro_, 397 F.3d at 45. Unlike the motor vehicle in _Dessesaure_, the Mazda observed on January 16, 2005, was not registered to Mr.

Hicks nor was it listed to 15 Cabot Street.  <u>See Dessesaure</u>, 429 F.3d at 368.

The affidavit's deficiencies in this case leads to the conclusion that the magistrate judge did not have a substantial basis to conclude that probable cause existed to believe that evidence of criminal activity would be found at 15 Cabot Street. <u>See Gates</u>, 462 U.S. at 238-39.  The search warrant issued in violation of Hick's right to be free from an unreasonable search and seizure guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.  Therefore, the Defendant's Motion to Suppress must be allowed and items seized must be suppressed.

<u>**CONCLUSION**</u>

For the forgoing reasons the Defendant's Motion to Suppress Evidence Seized Pursuant to an Unlawful Search Warrant must be allowed.

By his Attorney,

<u>/S/Joseph F. Krowski, Jr., Esquire</u>
JOSEPH F. KROWSKI, JR., ESQUIRE
30 Cottage Street
Brockton, MA 02301
(508) 584-2555
BBO: 640902

Date: March 6, 2005

13

103169

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                    •                    BROCKTON DISTRICT COURT
                                                     BROCKTON MASSACHUSETTS
                                                     DOCKET # *05/20* KML-2*

To the sheriffs of our several counties,
or their deputies, any State Police Officer,
or any Constable or Police Officer of any city or town within our said
Commonwealth

Proof by affidavit having been made this day before me, the undersigned
by Richard F. Long, a State Police Officer assigned to the Office of the Plymouth County
District Attorney, that there is probable cause for believing that certain property is unlawfully
possessed or kept or concealed for an unlawful purpose.

We therefore command you at any time of the day or night to make an
immediate search of **15 Cabot Street, Brockton, Massachusetts,** which is more
particularly described as a single family dwelling. The dwelling is tan in color with
brown shutters. Facing the house from Cabot Street there is a cement stair case leading
to a front porch. The number 15 is posted in black lettering to the right of the front door
above a black mailbox. Atop the cement staircase is an entry door, which is white in
color with a small pane of glass at the top of the door. This is the door we seek entry,
which may be occupied by **Paul Hicks, DOB: 5/19/73, SS# 010583407,** or unknown
others, and of any person present who may be found to have such property on his
person or under his control or to whom such property may have been delivered for the
following property: All controlled substances which have been manufactured, delivered,
distributed, dispensed or acquired in violation of Chapter 94C, M.G.L.A. All materials,
products, and equipment of any kind which are used, or intended for use, in
manufacturing, compounding, processing, delivering, dispensing, distributing,
importing, or exporting any controlled substance in violation of Chapter 94C, M.G.L.A.
All books, records and monies used or intended for use in the procurement,
manufacture, compounding, processing, delivery or distribution of any controlled
substance in violation of Chapter 94C, M.G.L.A. All money which is the proceeds of
the sale of any controlled substance, and if you find any such property or any part
thereof to bring it and the persons in whose possession it is found before the
BROCKTON DISTRICT COURT at said BROCKTON, in said County and
Commonwealth, as soon as it has been served and in any event not later than seven days
of issuance thereof.

Witness, DAVID G. NAGLE, Esquire First Justice, at BROCKTON aforesaid this *20*th day

of *January*, 2005

Ken M. Leach

Assistant Clerk Magistrate

I received the attched search warrant on _____ , 2005 .
and have executed it as follows:

On _____ , 2005 . at ____ o'clock ____M., I searched
(the person)_____ described in the warrant and (the premises)_____

The following is an inventory of property taken pursuant to the warrant:

_____

_____

No..
DISTRICT COURT DEPARTMENT
Brockton  DIVISION
COURT

COMMONWEALTH

vs.

Controlled Substance
" No Knock "

SEARCH WARRANT

G.L. c. 276, ss. 1 to 7
(St. 1964, c. 557)

This warrant must be returned
to the district court named within
seven days of its isssue.

2005

This inventory was made in the presence of _____
_____ and _____ .
I swear that this inventory is a true and detailed account of all the property taken by me on the
warrant.

_____

Subscribed and sworn to and returned before me this _____ day of _____
2005

_____
Clerk
Assistant Clerk

*Strike inapplicable clauses.

1 0 3 1 6 9

PLYMOUTH, SS.                                          BROCKTON DISTRICT
COURT
                                                        DOCKET # 050120KMC-2

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT
G.L. c. 276, ss, 1 to 7; St. 1964, c. 557

1/20/05

       I, Richard F. Long, being duly sworn, depose and state that the following is
true to the best of my knowledge and belief:

1.     I am a Massachusetts State Police Officer. I have been so employed since
October of 1992. During my eleven plus years as a State Police Officer, I have been
assigned to both the Uniformed Branch, and the Bureau of Investigative Services.
Presently, I am assigned to the narcotics section of the Plymouth County District
Attorney's Office. I have been assigned to the Bureau of Investigative Services
since July, 1997. My duties include but are not limited to the investigation of
narcotics violations and offenses. I have attended several narcotic seminars and
courses and have been involved in numerous narcotics arrests and investigations. I
have had the opportunity to work with and be trained by more experienced officers
in the investigation of major narcotics organizations.

2.     In the course of performing my duties as a State Police Officer, I have been
involved in and directly made narcotics purchase as an undercover State Police
Officer. I have participated in various aspects of narcotics investigations including
controlled purchases, controlled deliveries, undercover purchases, rips, surveillance
and court ordered electronic surveillances authorized by the state. As a result of my
experience, I am familiar with the vernacular, or code words and terms, which
sellers and users of narcotics use.

3.    I have information based upon the following: During the months of December 2004 and January 2005, this affiant met with a confidential and reliable informant, hereinafter referred to as CI#1, regarding crack cocaine distribution within the City of Brockton. CI#1 is familiar with crack cocaine distribution and usage having been a user and purchaser for the past several years.

4 .    Lt. Anthony Thomas, Trooper James Arroyo, and this affiant know CI#1's true identity. The term CI#1 does not denote male or female gender. CI#1 has purchased cocaine and other illicit drugs in the past and is familiar with the descriptive qualities of cocaine and many of the methods of cocaine distribution, including the way it is packaged and distributed.

5.    CI#1 has provided accurate and reliable information to Massachusetts State Police in the past, which led to the arrest of an individual charged with trafficking in cocaine (over 14 grams), Possession of a Firearm (3 counts), Possession of Ammunition, and Drugs within a School Zone. The case is currently pending in Brockton Superior Court. In this case, CI#1 provided accurate and reliable information regarding the subject's alias, physical description, types of vehicles used to deliver cocaine, and his/her method of operation. Additionally: CI#1 made three controlled purchases of cocaine from this subject during the course of the investigation. CI#1 also told this affiant that it had observed the subject in possession of a black .45 caliber firearm on one occasion. In February 2004, as a result of this information "No Knock" search warrants were obtained from the Brockton District Court for two residences within the city of Brockton in addition to a motor vehicle.

2

CI#1's information proved reliable including the descriptive qualities of a firearm ( .45 Caliber) which was recovered by Massachusetts State Police. To name the person (s) arrested, and the date, time, and location of the arrest would reveal CI#1's identity. CI#1's wishes to remain anonymous because CI#1's fears that if its identity became known, CI#1 would face bodily harm. For these reasons CI#1's identity must remain confidential.

6.        In the months of December 2004 and January 2005, CI#1 told this affiant that it had been purchasing crack cocaine from a subject known to it as "Pudgie" or "Paul". CI#1 told this affiant that it would call cellular telephone numbered (617) 834-3198, speak with "Pudgie", and arrange for the purchase of the requested amount of cocaine. CI#1 would then travel to a public location within the city of Brockton and meet with "Pudgie" where it would exchange an amount of U.S. currency for the requested amount of crack cocaine. CI#1 described "Pudgie" as a black male, in his early thirties, approximately 5'8" to 5'10" in height, medium build, with short cropped brown hair.

7.        This affiant knows the nickname "Pudgie" to belong to Paul Hicks, DOB: 5/19/73, SS# 010583407. On January 7, 2005, this affiant again met with CI#1. At that time, CI#1 was shown a photograph of Paul Hicks, DOB: 5/19/73, SS# 010583407, obtained from the Brockton Police Department. CI#1 positively identified Hicks as the same male that it knew as "Pudgie". CI#1 also stated that Hicks was the same subject that has been selling it crack cocaine upon request.

8.        A check with the Massachusetts Board of Probation records revealed Paul Hicks, AKA: "Pudgie", DOB: 5/19/73, SS# 010583407, has ninety six (96) adult and three (3) juvenile entries dating back to 1990. The charges include:

Distribution of a Class "B" Controlled Substance, Possession W/ Intent to Distribute a Class "B" Controlled Substance, Drugs Within a School Zone, Conspiracy to Violate the Controlled Substance Act, Assault and Battery with a Dangerous Weapon (gun), unlawful Possession of a Firearm, Possession of Ammunition, and numerous other crimes of violence.

9.          On or about, January 7th, 2005, Detective Robert Morrissey of the Brockton Police Department and this affiant met with CI#1. At that time, CI#1 agreed to make a controlled purchase of crack cocaine from Paul Hicks, AKA: "Pudgie", for Massachusetts State Police. This affiant confirmed CI#1 had no narcotics or monies on its person and this affiant then provided CI#1 with an amount of U.S. currency to purchase crack cocaine. This affiant then watched CI#1 dial cellular telephone numbered (617) 834-3198 and make arrangements to meet Hicks at a public location within the city of Brockton. Detective Morrissey and this affiant surveilled CI#1 directly to the pre-arranged location. Moments later, CI#1 immediately returned to this affiant and turned over an amount of suspected crack cocaine, which it stated was purchased from "Pudgie". Based on my training and experience the substance was consistent with how street level cocaine appears and is packaged for distribution. At the Middleboro State Police Barracks, the substance was field tested and proved positive for cocaine.

10.        On or about, January 16th, 2005, this affiant met with CI#1. At that time, CI#1 agreed to make a second (2nd) controlled purchase of crack cocaine from Paul Hicks, AKA: "Pudgie", for Massachusetts State Police. This affiant confirmed CI#1 had no narcotics or monies on its person and this affiant then provided CI#1 with an amount of U.S. currency to purchase crack cocaine. This affiant then watched CI#1 dial cellular telephone numbered (617) 834-3198 and make arrangements to meet

4

Hicks at a public location within the city of Brockton. Surveillance was conducted by Sergeant Kevin O' Connell, Detective Robert Morrissey, Timothy Stanton, Jeffrey Costello, George Khoury, Thomas Keating, and this affiant. This affiant surveilled CI#1 directly to the pre-arranged location. Within ten minutes, this affiant observed a black Mazda MPV van bearing Massachusetts Registration 63PS28 arrive at CI#1's location. The vehicle was occupied by one black male. CI#1 met briefly with the operator of the vehicle and they departed company. CI#1 immediately returned to this affiant and turned over an amount of suspected crack cocaine, which it stated was purchased from "Pudgie". Based on my training and experience the substance was consistent with how street level cocaine appears and is packaged for distribution. At the Middleboro State Police Barracks, the substance was field tested and proved positive for cocaine. Following the aforementioned narcotics transaction, the vehicle was surveilled to 15 Cabot Street, Brockton.

11.     A check with the Massachusetts Registry of Motor Vehicles revealed Massachusetts Registration 63PS28 is listed to a 1992 Mazda MPV minivan, color black, VIN# JM3LV5222N0452461, and is registered to Burnette Dubose, DOB: 5/19/80, of 167 Newbury Street, apartment 101, Brockton, Massachusetts. A check with the Massachusetts Board of Probation Records proved negative for Burnette Dubose. A check with Eastern Utilities Security revealed service at 15 Cabot Street, Brockton, is listed to Paul Hicks, SS# 010583407, with a contact number of (508) 857-5150. A check with AT&T Wireless revealed cellular telephone numbered (617) 834-3198 is listed to Edward E. Robinson, SS# 030561966.

12.     This affiant is familiar with 15 Cabot Street, Brockton, from a past search warrant conducted by Trooper Eric Telford of the Massachusetts State Police Gang Unit. On January 13, 2004, this affiant assisted the Mass. State Police Gang Unit

with the execution of a search warrant at the aforementioned address. During the course of the investigation, Trooper Telford made undercover crack cocaine purchases from Renae Yarrell, DOB: 1/2/70, SS# 026667503, and Edward Robinson, DOB: 5/10/70, SS# 030561966. Sgt. Mark Kiley and Trooper Telford know Renae Yarrell to be the girlfriend of Paul Hicks. The vehicle used to deliver crack cocaine to Trooper Telford on three occasions was registered to Paul Hicks father. Additionally, the cellular telephone currently being used by Hicks to arrange for crack cocaine purchases is listed to Edward Robinson, whom sold crack cocaine to Trooper Telford. During the execution of the search warrant conducted on January 13, 2004, Troopers recovered an amount of cocaine from within the residence as well as monies in excess of $7,000.00.

13.    On January 19, 2005, this affiant again spoke with CI#1 about crack cocaine distribution. CI#1 advised this affiant that it had met Hicks, AKA: "Pudgie" within the past twenty four hours and it observed crack cocaine within his possession. Based on the information provided by CI#1 and the investigation conducted by this affiant, this affiant believes that Paul Hicks, AKA: "Pudgie" continues to sell crack cocaine on a daily basis.

14.    This affiant believes that 15 Cabot Street, Brockton, is a location maintained by Hicks not only to distribute drugs for distribution from, but is maintained to prepare drugs for distribution and secure its proceeds. Additionally, paraphernalia associated with the distribution of drugs, such as packaging material, scales, cutting agents, telephones, beepers, and records of cocaine quantities and monies owed may be maintained within 15 Cabot Street, Brockton. This affiant knows that those who distribute crack cocaine must prepare it. This chemical process of converting powdered cocaine into crack cocaine requires heating instruments, masks, vials, test

6

tubes, pan sheets, and cooling instruments. This is just to mention some of the paraphernalia required to process crack cocaine. It is the belief of this affiant that these items are also maintained by Hicks at 15 Cabot Street, Brockton.

15.    It is this affiant's belief that 15 Cabot Street, Brockton, Massachusetts, is a location where crack cocaine and its proceeds are being stored in a continuing cocaine enterprise being operated by Paul Hicks, AKA: "Pudgie", DOB: 5/19/73, or unknown others. This opinion is based on the following:

a.    CI#1 provided accurate information about Paul Hicks, AKA: "Pudgie", including his physical description, nickname, and cellular telephone (617) 834-3198. This affiant then corroborated the information through surveillance, intelligence, and other investigative techniques.

b.    CI#1 also made controlled purchases of crack cocaine for Massachusetts State Police, on or about, January 7th, and, 16th, 2005, from Paul Hicks. Following the purchase made on or about, January 16th, 2005, Hicks was surveilled back to 15 Cabot Street, Brockton.

c.    CI# positively identified Paul Hicks, AKA: Pudgie, DOB: 5/19/73, from a photograph provided by this affiant.

d.    According to Eastern Utilities Security, utilities at 15 Cabot Street, Brockton, are listed in Paul Hicks' name.

e.    This affiant has conducted periodic checks of the residence and have observed the black Mazda MPV van bearing Massachusetts Registration 63PS28 at the residence on numerous occassions, including the early morning and late evening hours.

16.    Investigators know Heroin and Cocaine distribution to be extremely violent, conducted mainly through street sales, which oftentimes result in competing gang

violence, carried out through the use of firearms. The main target of this investigation (Hicks) has numerous offenses on his Board of Probation record (see paragraph 8) including crimes such as Assault and Battery w/ a Dangerous Weapon, Possession of a Firearm, Carrying a Dangerous Weapon (knife), Armed Assault in a Dwelling and other violent crimes. Because of the nature of the drug trade and Hicks propensity for violence, this affiant believes that Hicks has access and may be in possession of a firearm as he conducts his illicit enterprise. **Based upon the above stated facts and to ensure officer's safety this affiant requests the court issue a "No Knock" warrant.**

17.    Based upon the foregoing reliable information, and upon my personal knowledge and belief and attached affidavits, there is probable cause to believe that the property hereinafter described (has been stolen, or is being concealed, etc.) cocaine, a Class B Controlled Substance in Violation of Chapter 94C, Section 32, M.G.L.A. and may be found in the possession of Paul Hicks, DOB: 5/19/73, SS# 010583407, or unknown others at 15 Cabot Street, Brockton.

18.    The property for which I seek the issuance of a search warrant is the following: All controlled substances which have been manufactured, delivered, distributed, dispensed or acquired in violation of Chapter 94C, M.G.L.A. All materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, dispensing, distributing, importing, or exporting any controlled substance in violation of Chapter 94C, M.G.L.A. All books, records and moneys, computers, disks, floppy discs, used or intended for use in the procurement, manufacture, compounding, processing, delivery or distribution.

8

19.    Wherefore, I respectfully request that the court issue a, "**No Knock**" warrant and order seizure, authorizing the search of **15 Cabot Street, Brockton, Massachusetts,** which is more particularly described as a single family dwelling. The dwelling is tan in color with brown shutters. Facing the house from Cabot Street there is a cement stair case leading to a front porch. The number 15 is posted in black lettering to the right of the front door above a black mailbox. At the top of the cement staircase is an entry door, which is white in color with a small pane of glass at the top of the door. This is the door we seek entry, which may be occupied by Paul Hicks, DOB: 5/19/73, SS# 010583407, a **1992 Mazda MPV minivan, color black, VIN# JM3LV5222N0452461, bearing Massachusetts Registration 63PS28,** and is registered to Burnette Dubose, DOB: 5/19/80, of 167 Newbury Street, apartment 101, Brockton, Massachusetts, and of any person present who may be found to have such property on his person or under his control or to whom such property may have been delivered for the following property, and directing that if such property or evidence or any part thereof be found that it be seized and brought before the BROCKTON DISTRICT Court, together with such other and further relief that the court may deem proper.

Richard F. Long
MASSACHUSETTS STATE POLICE

Then personally appeared the above named Richard F. Long and made oath that the foregoing by him subscribed is true.

Before me,

Kevin M. Leal
1/20/05

9

# RETURN OF OFFICER SERVING SEARCH WARRANT

I received the attached search warrant on January 20th, 2005, and have executed it as follows:

On Thursday, January 20, 2005, at 1840 hrs, I searched the Person, Paul Hicks, DOB: 5/19/73, and the residence described in the warrant, **15 Cabot Street, Brockton, Massachusetts**.

The following is an inventory of property seized pursuant to the warrant:

| | **OFFICER** | **ITEM** | **LOCATION** |
|---|---|---|---|
| 1. | Det. Costello | 1 Uncle Mike's gun holster | Nightstand drawer #1/master bedroom |
| 2. | Det. Costello | One box containing 25 rounds of Federal 9.mm ammunition, 3 pistol magazines (1 containing 15 rounds of ammunition), 4 .357 rounds of ammunition, 4 rounds of 9 .mm ammunition, one plastic bag containing 25 rounds of 9.mm ammunition | Nightstand drawer #1/master bedroom |
| 3. | Det. Costello | Nextel cellular telephone | Nightstand drawer #1/master bedroom |
| 4. | Det. Costello | $149.00 in U.S. currency | Nightstand drawer #1/master bedroom |
| 5. | Det. Costello | Comcast bill in name of Paul Hicks and address of 15 Cabot Street, M.V.V. | Draw of nightstand #2 |
| 6. | Tpr Gilmore | 21 rounds of misc. ammunition | Top shelf of hallway closet |
| 7. | Det. McDermott | $2,090.00 in U.S. currency | Jacket pocket of men's leather jacket |
| 8. | Tpr Walls | Silver revolver | Hidden behind wall in basement crawl space in cardboard box |
| 9. | Det McDermott | Misc. paperwork | Cellar |
| 10. | Tpr Arroyo | Plastic bags | In hallway closet |
| 11. | Det. Costello | Jennings scale, box of sandwich bags, baking soda | Half wall ledge in basement |
| 12. | Det. Costello | 1 bag of suspected crack cocaine, 2 twists of suspected crack cocaine | Inside left leg of weight bench (inside tubing) |
| 3. | Tpr Long | 1 plastic bag containing two bags of suspected powdered cocaine | Inside right leg of weight bench (inside tubing) |
| 4. | Det. Keating | 1 Palmscale digital scale, 1 Tanita digital scale, Comcast bill in name of Paul Hicks | Inside cabinet above refrigerator in kitchen |

| 15. | Tpr Gilmore | Calculator | Kitchen drawer next to stove |
| 16. | Tpr Telford | Misc paperwork | Master bedroom |

The inventory was made in the presence of Lieutenant Anthony E Thomas, Trooper ET McDonald, and Long.

I swear that this inventory is a true and detailed account of all the property taken by me on the warrant.

Trooper Richard F. Long, #2212

Subscribed and sworn to and return before me this 1⁶ day of January, 2005

Assistant Clerk Magistrate

1/26/05
2:50 P.M