```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )    Criminal No. 05-CR-10204-GAO
        v.                  )
                            )
PAUL HICKS,                 )
                            )
        Defendant.          )
```

## GOVERNMENT'S SUPPLEMENTAL MOTION IN LIMINE TO ADMIT OTHER CRIMES EVIDENCE

The government hereby moves in limine to admit under Federal Rule of Evidence 404(b) a recording of a telephone call made by the defendant from the Bristol County House of Correction to his girlfriend Renae Yurell. During the call, the defendant directs Yurell to secure both cash and cocaine he left at her house at 15 Cabot Street before his arrest. For all the reasons set forth in the government's original Motion in Limine to Admit Other Crimes Evidence, the phone call would be relevant to demonstrate the defendant's knowledge and intent. But the phone call also would be singularly probative of the defendant's *modus operandi*. It would demonstrate the defendant's practice of employing Yurell and his friend Edward Robinson, and of using Yurell's house, to facilitate his cocaine distribution business. This is a particularly key point because the defense in this case is that the drugs found during the search in this case belonged exclusively to Yurell or Robinson, both of whom were arrested for selling crack out of the house shortly after the phone call from Hicks. In this way, Hicks's "jail call" would tend to show that

the cocaine found in the house was, if not his exclusively, then his jointly with Yurell and/or Robinson.  The heightened relevance of this call outweighs any prejudicial effect.

Summary of Case and Proffer of Evidence

This case arose out a search of a single-family house located at 15 Cabot Street in Brockton.  The search warrant was based on evidence that the defendant sold cocaine to a confidential informant twice in the previous two weeks.  The officers who executed the warrant found the defendant in the master bedroom, appearing to have recently emerged from the shower.  He was the only adult in the house (there were two children in another room).

The searching officers found a variety of evidence of drug activity throughout the house.  In a night stand in the master bedroom, they discovered a cell phone subscribed to the defendant, along with handgun ammunition, holster and empty magazines, and a utility bill in his name.  They also found men's clothing in the closet, including a coat containing approximately $2,000 in cash.  In a kitchen cabinet, they found a digital scale, along with another utility bill in his name.  In the basement, officers discovered approximately twenty-one grams of crack cocaine, and 125 grams of cocaine powder hidden in the legs of a weight bench. Along a wooden shelf nearby, they found additional tools of the drug trade: a box of baking soda and a

package of zip-lock bags.

The defendant was charged by indictment with one count of being a felon-in-possession of ammunition, in violation of Title 18, U.S.C., Section 922(g), and one count each of possessing-with-intent to distribute cocaine base and cocaine, both in violation of Title 21, U.S.C., Section 841(a)(1).  As to the narcotics charges, the government must prove among other things both that the defendant knew the drug packages were hidden in the bench (as he could not otherwise have "possessed" them) and that he intended to distribute those drugs, instead of merely consuming them.

The defendant will argue that the drugs seized in the apartment belonged to either his girlfriend Renae Yurell or his friend Edward Robinson.  In January 2004, while the defendant was incarcerated on unrelated charges, Yurell and Robinson each sold cocaine to an undercover police officer, and were arrested shortly thereafter.[1]

The government wishes to introduce a tape recorded telephone conversation between the defendant and Yurell on January 10, 2004 in which Hicks seeks to account for the money and drugs that he had stashed at her house and how much she had sold. Specifically, he told her that he left her with "$17,000 worth of

---

[1] Yurell ultimately was convicted of distribution charges, and Robinson was acquitted.

shit" and "$6000 in cash". He uses other words apparently to refer to cocaine, including "raw food" and "powder"; and uses the term "cooked food" evidently to refer to crack cocaine.[2] She then explains to him that she has approximately $2000 worth cocaine remaining that she and Edward Robinson had sold the rest. He then directs her to sell the rest.

## Argument

The First Circuit repeatedly and unequivocally has held in possession-with-intent cases that evidence of prior drug distribution or possession-with-intent convictions are admissible under Rule 404(b) to demonstrate that the defendant's knowledge of the presence of narcotics and his intent to distribute them. See e.g. United States v. Garcia, 983 F.2d 1160, 1173 (1st Cir. 1993) (admitting prior distribution convictions of defendants charged with possession-with-intent to distribute cocaine to show that they knew there was cocaine in the apartment and that they intended to distribute it).[3] Courts have held that the probative value of such prior convictions as knowledge and intent evidence

---

[2] The government will call State Trooper Dean Levangie as its "drug expert" who, among other things, will explain the meaning of these terms. He will also testify that a common practice among cocaine dealers who are arrested is to secure both their cash and their drugs the have secreted away. According to Levangie, one reason for this is to convert the drugs to cash by directing a girlfriend or close associate to sell them, so that the individual may make bail or pay his attorney.

[3] The government's original motion in limine cites additional First Circuit that support this general point.

was not substantially outweighed by their potential prejudicial effect as evidence of "bad character".  See Ferrer-Cruz, 899 F.2d at 138 (noting that the probity of such evidence is "quite high").  Because Rule 404(b) covers prior "acts" and not merely those that result in conviction, the rule does not preclude the admission of acts that are probative of knowledge, intent or modus operandi, even if they did not result in conviction, so long as the evidence appears otherwise reliable.  United States v. Garcia, 983 F.2d 1160, 1172 (1st Cir. 1993); United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996) (evidence of defendant's prior drug dealing "highly probative of the knowledge and intent elements" of drug charge).

For the same reasons, the phone call in which the defendant and Yurell discuss their cocaine inventory is directly relevant to show knowledge, intent and *modus operandi*.  It would demonstrate the defendant's practice of employing Yurell and his friend Edward Robinson, and of using Yurell's house, to facilitate his cocaine distribution business.  This is a particularly key point because the defense in this case is that the drugs found during the search in this case belonged exclusively to Yurell or Robinson, both of whom were arrested for selling crack out of the house shortly after the phone call from Hicks.  In this way, Hicks's "jail call" would tend to show that the cocaine found in the house was, if not his exclusively, then

his jointly with Yurell and/Robinson.  In this way, the call is centrally relevant.  United States v. Devin, 918 F.2d 280, 288 (1st Cir. 1990) ("Put another way, "other acts" evidence which is closely bound up with the crimes charged is eligible for admissibility under Rule 404(b)").

It makes no difference that the conduct reflected in the recording did not result in a conviction of the defendant because the recording is highly reliable evidence.  The government is not relying an eye witness identification of the defendant to implicate him in a prior bad act, as is the usual case.  Rather, the government seeks to introduce a digital recording of the defendant's own voice, which will be identified by other government witnesses.  There is no real risk that the evidence is not what it purports to be.

Because of its high relevance, the Court should follow clear First Circuit law and admit the evidence.  To the extent that the evidence reflects poorly on the defendant's character, the Court should issue a limiting instruction.

Wherefore, the Court should admit the recording under Rule 404(b) as evidence of the defendant's knowledge of the presence cocaine, his intent to distribute it, and his *modus operandi*.

                                  Respectfully submitted,

                                  MICHAEL J. SULLIVAN
                                  United States Attorney

                     By:   /s/ Jonathan F. Mitchell
                           JONATHAN F. MITCHELL
                           Assistant U.S. Attorney

Dated: October 11, 2006