UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
          Plaintiff,              )
                                  )
          vs.                     )    Docket No: 05-CR-10204-GAT
                                  )
PAUL HICKS                        )
                                  )
          Defendant,              )

DEFENDANT'S SENTENCING MEMORANDUM   AND REQUEST
FOR A SENTENCE BELOW THE ADVISORY GUIDELINES

The defendant, Paul Hicks, submits this sentencing memorandum in anticipation of his sentencing scheduled for June 29, 2007. The defendant concedes that the career offender and armed career criminal provisions of the advisory Federal Sentencing Guidelines apply[1].  However, pursuant to Title 18 U.S.C. section 3553 (a) the defendant asserts that a sentence of imprisonment substantially lower than that suggested by those provisions is sufficient, but not greater than necessary, to effectuate the purposes of sentencing.

---

[1] The defendant renews his objection to the application of the career offender and armed career criminal provisions as previously stated and filed in his objections to the presentence report.

1

### FEDERAL SENTENCING GUIDELINE CALCULATION

On October 19, 2006 a jury convicted the defendant on all three counts of the indictment.  Count one charged the defendant with being a Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1).  Count two charged the defendant with Possession of Cocaine Base with Intent to Distribute, in violation of, 18 U.S.C. 841(a)(1).  Count three charged the defendant with Possession of Cocaine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1).

Count 1 carries a statutory maximum sentence of ten (10) years imprisonment.  Count 2 carries a statutory minimum sentence of five (5) years imprisonment and a statutory maximum sentence of forty (40) years imprisonment.  Count 3 carries no statutory minimum sentence and a statutory maximum sentence of twenty (20) years imprisonment.

The base offense level for count 1, a violation of 18 U.S.C. 922(g)(1) is governed by U.S.S.G. § 2K2.1.  The PSR correctly calculated the base offense level for that offense at 28.

The corresponding base offense level for a violation of 21 U.S.C. 841(a)(1) is governed by U.S.S.G. § 2D1.1.C Because counts 2 and 3 involved two different forms of

cocaine the PSR correctly applied the Drug Equivalency

Tables and converted them both to their corresponding

Marijuana equivalency.[2] The PSR then pursuant to U.S.S.G. §

2D1.1(c)(6) correctly determined the corresponding base

offense level at 28. The PSR then under the alleged

authority of U.S.S.G. § 2D1.1(b)(1) increased the base

offense level by two points.

That section calls for a two point increase for crimes

involving drugs if a dangerous weapon was possessed.  Here

there was no such dangerous weapon possessed and the

defendant therefore renews his objection to the two point

increase in the base offense level.  The government did not

introduce any alleged weapon at trial.  There was only a

minimal reference to the alleged observation of an old and

inoperable starter's pistol located in the basement at 15

Cabot Street.  There is no allegation by any source that it

qualified as a firearm or as a dangerous weapon or that the

defendant in any way possessed it or used it in connection

with the distribution of drugs. See Application Note 3 to

section 2D1.1 (An unloaded hunting rifle in the closet)

would not render one liable for the two point enhancement.

---

[2] The Drug Equivalency Table applies a 100 to 1 crack to cocaine ratio in
determining the Marijuana equivalency.  This and other related portions
of the guidelines are criticized infra.

The PSR pursuant to U.S.S.G § 3D1.2 grouped the offenses together.  Section 3D1.3(a) directs that under this scenario the highest offense level of any count in the group is the calculated base offense level.  The defendant submits that the base offense level is therefore 28.  This diverges from the PSR due to the defendant's previously stated position that no enhancements under section 2D1.1 should apply.

The PSR calculation of the defendant's criminal history points has placed him in category VI.  The calculated guideline sentence range would be 140–175 months imprisonment.

The probation department has asserted that the career offender provisions of the U.S.S.G. § 4B1.1 and the armed career criminal provisions of the U.S.S.G. § 4B1.4 are applicable.  Section 4B1.1 directs that the offense level is calculated according to the offense statutory maximum. Pursuant to the enhancement provisions of 21 U.S.C. 841 (b)(1)(b) and 21 U.S.C. 851 the statutory maximum sentence is life imprisonment[3].  The corresponding base offense level becomes a 37.  Section 4B1.4 does not alter the calculation.  In fact that section directs that the offense

---

[3] The defendant has objected to the use of prior convictions for the purposes of sentence enhancement and would hereby renew that objection.

level is derived from the career offender provisions of the guidelines.

Under the career offender provision the defendant is automatically placed into criminal history category VI. The adjusted guideline sentence is 360 months to life imprisonment.

### A SENTENCE OF IMPRISONMENT SUBSTANTIALLY LOWER THAN THE GUIDELINE CALCULATION IS WARRANTED

The defendant does not dispute (excepting his previously noted objections) the guideline calculation as determined by the probation department.  However, while the court must calculate and consider the guidelines, they are advisory and only one of several statutory factors the court must consider when determining an appropriate sentence.  United States v. Booker, 543 U.S. 220 (2005). The guideline calculation is one of the relevant factors and must be calculated.  However, a sentence imposed in conformity with the guidelines is not presumed reasonable merely because it falls within the guidelines.  United States v. Jimenez-Beltre, 440 F3d. 514 (1st Cir. 2006).

Under the factors set forth in 18 U.S.C. § 3553(a)(2) the defendant submits that a sentence of imprisonment of

ten (10) years followed by eight (8) years of supervised

release is appropriate and reasonable.

Section 3553(a) directs the court to "impose a

sentence sufficient, but not greater than necessary" to

comply with certain statutory objectives and relevant

factors.  United States v. Foreman, 436 F.3d.638 (6th Cir.

2006). Those factors are as follows:


**1.  The nature and circumstances of the offense and the
history and characteristics of the defendant.**


On October 19, 2006 a jury convicted the defendant on

all three counts of the indictment.  Count one charged the

defendant with being a Felon in Possession of Ammunition,

in violation of 18 U.S.C. § 922(g)(1).  Count two charged

the defendant with Possession of Cocaine Base with Intent

to Distribute, in violation of, 18 U.S.C. 841(a)(1).  Count

three charged the defendant with Possession of Cocaine with

Intent to Distribute, in violation of 21 U.S.C. §

841(a)(1).

The jury found that on January 20, 2005 the defendant

was in constructive possession of some ammunition, 21.22

grams of Cocaine Base, and 125.19 grams of cocaine powder

both substances possessed with the intent to distribute.

The circumstances surrounding the offenses while serious
are consistent with that of the quintessential small time
street level drug dealer.  This was not an elaborate
conspiracy, nor was it a sophisticated drug operation with
a complicated hierarchy, as evidenced by the defendant's
own personal involvement with and proximity to the illegal
substances, and his alleged hand to hand transactions with
the confidential informant. Notwithstanding count 1 of the
indictment, there is no allegation that the defendant
possessed or used a firearm or committed any act of
violence to further the small time enterprise.

The defendant's acknowledges the serious nature of the
crimes for which he has been convicted.  He now asks this
court to consider them within the context of his entire
life and upbringing in imposing a fair and just sentence.

The defendant is a 33 year old African American male.
He grew up in a typical middle class family.  His parents,
Paul Hicks Sr. and Rosemary Hicks raised the family
consisting of 8 siblings in Dorchester Massachusetts. The
defendant by all accounts lived in a good home.  Throughout
his entire childhood and adult life, he received the
economic, emotional, and institutional support of his
family. Paul Sr. is an arson investigator with the Boston

Fire Department.   Rosemary is a Massachusetts State Police trooper.

The defendant in the PSR makes it clear that he loves his parents and is ashamed of the hurt he has caused them. He does not cast any negative inference upon them. Unlike many of his peers, his home was not one marked by domestic violence or substance abuse.   Accordingly and admirably, the defendant refuses to place any blame upon his parents for any of his past or present difficulties.

According to the PSR his father described Paul as respectful and helpful in the family home.   Both parents are lost for an explanation, but they do attribute the source of Paul's problems to "associating with the wrong crowd", and "life on the streets".   In fact, the parents moved the family to Plymouth, Massachusetts when Paul was 21 years old in part to escape the devastating impact of the Dorchester neighborhood.   A neighborhood plagued by drugs and violence.

The parents moved the family to Brockton in 2001 where they now reside in a single family home.   His life has not been one without tragedy.   His brother Darren died in 2003 from complications due to Diabetes.   Paul and his brother are only six years apart.   This death had a terrible effect on Paul and his family.   The court should recall the

mother's poignant testimony at trial describing the death of her son.

The defendant graduated from Hyde Park High School in 1992.  At the time of his arrest he was enrolled at the Bay State School of Technology.  Notwithstanding his current plight, the academic and attendance records from the school as confirmed in the PSR evidenced a real commitment to change his life. He is articulate, intelligent, and has been a valuable asset in the preparation of his own defense.  As such, the defendant is eager to pursue any and all educational programming available to him while in the custody of the federal bureau of prisons.

According to the PSR the defendant's brother Dana Hicks is currently seving a federal sentence and his brother Sir Dawayne Hicks is held in federal custody awaiting a Rule 11 Plea Hearing.  The influence of the streets certainly impacted the defendant in a negative way. Although not an excuse, one cannot ignore the effect years spent surrounded by the drugs and the violence in the neighborhood has had on the defendant.

The defendant does not wish to blame the totality of his current situation exclusively on the neighborhood.  He fully realizes that much of the responsibility and blame must be placed upon himself.  Many good young African

9

American men grow up in these neighborhoods in less than ideal conditions and go on to prosper and lead lives as law abiding members of society.  However, the court cannot ignore the overwhelming evidence that too many predominately young black men from similar neighborhoods fall prey to lure of the streets, and consequently become involved in the criminal justice system.

Paul was able to escape becoming involved in the use of drugs.  In fact, other than some minor experimentation with Marijuana he denies any drug use at all.  However, the defendant acknowledges a long and troubled battle with alcohol abuse.  The PSR correctly points out that the defendant has benefited from substance abuse treatment in the past and believes that he would clearly benefit from such treatment while incarcerated with the burea of prisons.

This has been a difficult time for Paul and his family.  His parents are committed to their son and vow to do whatever it takes to help him.  Paul presently enjoys the continued and strong support of a vast extended family. He is still in a relationship with Renee Yarrell.  They desperately want to live together with her children as a family, and are in the process of getting married.  This is a motivating factor and a source of hope and strength for

the defendant in his quest to reenter society as a

productive law abiding member.

**2.  The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed training or services. 18 U.S.C. § 3553(a)(2)(A–D)**

The offenses here are serious and do merit a significant

period of incarceration.  Mr. Hicks takes the position that

a Fifteen (15) year period of imprisonment followed by

eight (8) years of supervised release, more than adequately

reflects the seriousness of the offense.  Fifteen years

imprisonment is a considerable period of incarceration that

would satisfy the "needs" of this subsection.  In fact the

court should conclude that such a sentence is more in line

with the seriousness of the crime, the possession of a

small amount of ammunition and cocaine with the intent to

distribute, than is the 360 months to life sentence

suggested by the advisory (emphasis added) guidelines.  The

number called for in the guidelines is driven more by his

career offender, and armed career criminal status than it

is by the seriousness of the offense.

11

Fifteen years of imprisonment will also act as a significant deterrent to any future criminal conduct. If the court were to impose the defendant's suggested sentence, the defendant would be 48 years old at the time of his release. It would give him a substantial period of time to think about and take responsibility for his past actions while providing him with the dual incentive of avoiding the same mistakes upon release. A fifteen year sentence still gives him the chance to make a life for himself and his family. In that way, the intermediate sentence proposed by the defendant actually serves more as a deterrent than that recommended by the guidelines.

Paul is anxious to pursue all of the counseling, educational, and vocational training available to him during his period of incarceration including the anger management, parenting, and substance abuse classes. Fifteen years gives him more than enough time to complete these programs. Further incarceration beyond that serves no recognizable deterrent effect, and does nothing to address the issues raised in the PSR or in this memorandum. In fact, in its own report the sentencing commission found that there was no tangible proof that the 'career offender'

provision of the guidelines protected the public from the
future crimes of a defendant[4].

   The defendant's release from custody will be followed by
a mandatory eight (8) years of supervision U.S.S.G. §
5D1.2(b).  He knows that at this point in his life any
future criminal misconduct is not an option.  The message
has been sent and received that these types of crimes are
taken seriously.


**3.   The kinds of sentences available**.

    A period of imprisonment of fifteen years followed by
a period of supervised release of eight (8) years is
authorized by statute.  See:18 U.S.C. § 922(g), and 21,
U.S.C. 841(a).   It also takes into account the mandatory
sentence enhancements mandated under 21 U.S.C. § 841
(b)(1)(B) and 21 U.S.C. § 851.


**4.  The kinds of sentence and sentencing range established
by the Sentencing Guidelines and pertinent policy
statements.  18 U.S.C. § 3553(a)(4-5)**

    The advisory guideline range has been calculated and
addressed *supra*.

---

[4] Fifteen Years of Guidelines Sentencing: An Assessment of How Well the
Federal Criminal Justice System is Achieving the Goals of Sentencing
Reform (2004).

**5.   The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty to similar conduct.   18 U.S.C. § 3553 (a)(6)**

A sentence outside of the advisory guidelines will avoid the unwarranted disparity that would otherwise be created in this instance by their rigid application.  The guidelines were originally created to eliminate disparate sentences for similarly situated offenders that committed similar offenses.[5]  However, The United States Sentencing Commission has identified several key areas in which the guidelines have actually created unwarranted disparity in sentencing.

Fifteen Years of Guideline Sentencing, detailed the pattern of disparity when as here the defendant is a black male charged with a drug offense.  Under these circumstances, the commission found that a black defendant charged with a drug offense received a sentence 10% longer than that of his white counterpart. Id. at 123.  Much of this can be attributed to the 100 to 1 Crack to Cocaine Ratio and the Career Offender provision contained within the guidelines.  The defendant is subject to both of these sections of the guidelines.

---

[5] The Sentencing Reform Act

Black males account for 81% of the offenders sentenced for crack cocaine offenses[6]. Although there is no legitimate distinction between the drugs, the average length of imprisonment for a crack cocaine offense was 119 months compared to 78 months for a powder cocaine offense. Id. The commission pointed out that most crack offenses are committed by low-level offenders, and that these crimes are more often reported and prosecuted in urban areas made up of mostly minority populations. They noted that it is the single largest contributor to racial disparity in sentencing. Id. This disparity is compounded when the "career offender" provision of the guideline is applied. Although the defendant is also subject to the armed career criminal provisions of the guidelines the analysis remains relevant.

The career offender provision U.S.S.G §4B1.1 places an offender with three prior convictions for offenses involving violence or the distribution of drugs in criminal history VI, and sets the offense level at the guideline range associated with the statutory maximum penalty for the offense. The defendant by virtue of several state court convictions is subject to this provision. The sentencing commission found that in 2000, black males constituted 26%

---

[6] USSC Sourcebook (2002)

of the offenders sentenced under the guidelines, but an

overwhelming 58% of the offenders subject to the harsh

penalties of the career offender provision. Id. at 133.

The commission concluded that the career offender provision

has done little to reduce recidivism. Id.  What it has done

is widen the gap between the white majority and the black

minority defendants when it comes to sentencing.

     More recently the Sentencing Commission has renewed

their request to Congress to do away with the 100 to 1

ratio.  In their 2007 Report to Congress:  COCAINE AND

FEDERAL SENTENCING POLICY, the commission noted the 100 to

1 ratio has come under universal criticism from judges,

lawyers, scholars, public officials, and citizens groups.

The thrust of the report is that the ratio is

intellectually indefensible.  The commission urges congress

to at the very least adjust the threshold weight of Crack

to 25 grams.  Here the jury convicted the defendant of

possessing 21.22 grams.  If congress were to adopt the

commission's recommendations it would significantly reduce

the defendant's guideline number, and therefore, make his

requested sentence closer to conforming within the

guideline range.

     The defendant's requested sentence would mitigate some

of the unwarranted disparity created by these provisions.

The court should consider that the defendant is still required to serve a fifteen year minimum mandatory sentence.  The minimum mandatory component of this sentence would avoid the unwarranted racial disparity created by the guidelines while simultaneously ensuring society he will serve a sufficient sentence.

The goal of the federal criminal justice system is to be fair, both in perception and in reality.  Enforcement of these specific guideline provisions renders it neither. The court post <u>Booker</u>, has been granted the authority to rectify at least some of the disparity.

<u>**Conclusion**</u>

For all of the forgoing reasons, the defendant moves this court to impose a sentence of fifteen years incarceration followed by eight years of supervised release.

By his attorney,

<u>/s/ Joseph F. Krowski Jr.</u>
JOSEPH F. KROWSKI JR.
30 Cottage Street
Brockton, MA. 02301
508-584-2555

Dated:  May 24, 2007

**CERTIFICATE OF SERVICE**

I, Joseph F. Krowski Jr., do hereby certify that on this 24th day of May, 2007, I served a copy of the Defendant's Sentencing Memorandum (By electronic filing) upon: The Office of the United States Attorney, and The Office of the Board of Probation Department.

/s/ Joseph F. Krowski Jr.
Joseph F. Krowski Jr.